UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No.: 10-29919 |
| LP WATCH GROUP, INC., *et al.*, | ) | Jointly Administered |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |

**DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN INTERIM ORDER
(A) AUTHORIZING USE OF CERTAIN CASH COLLATERAL AND (B)
GRANTING SUBSTITUTE AND ADDITIONAL LIENS AND OTHER RELIEF**

**(Emergency Hearing Requested)**

LP Watch Group, Inc., Charles Winston Luxury Group, LLC, A.G. Inc., debtors and debtors in possession (collectively "Debtors"), hereby move on an emergency basis for the entry of an interim order (A) authorizing the Debtors to use certain "Cash Collateral" (as defined in section 363(a) of the United States Bankruptcy Code, 11 U.S.C. §101, *et. seq.* (the "Bankruptcy Code") and hereinafter referred to as "Cash Collateral"), all of which Cash Collateral is presently subject to senior security interests, liens and rights of setoff of Comerica Bank ("Comerica" or the "Lender"), and (B) granting certain substitute and additional liens and other relief for the benefit of the Lender. In support of the Motion, the Debtors state as follows:

### I.    Jurisdiction

1.    This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

2.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b).

9109748.1

3. The statutory predicates for the relief requested herein are Sections 361, 362 and 363 of the United States Bankruptcy Code, Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure.

## II.   Background

4. On the date hereof, ("Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"). On the same date, the Debtors filed a Motion for Joint Administration of Chapter 11 Cases.

5. Pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their business and manage their financial affairs as Debtors-in-possession. No trustee, examiner or committee has been appointed in the Chapter 11 Cases.

6. The Debtors are known for their Lucien Piccard brand of fine watches which have been handcrafted and manufactured for generations. Founded in 1923 in Switzerland, Lucien Piccard timepieces have adorned royalty, dignitaries and celebrities worldwide. Today, the LP Watch Group is a leader in the branded watch arena and has recently diversified into several categories of jewelry as well.  The Debtors' products combine art and fashion with superior technology and handcrafted quality.  Timepieces and jewelry from the LP Watch Group are manufactured in materials including 14 karat gold, stainless steel. High quality diamonds and precious and semi precious gems   are incorporated into many of the watch designs. The Debtors are Florida corporations with their principal places of business in Hollywood, Florida.

7. Initially renowned for its classic gold precision timepieces, the LP Watch Group in recent years has broadened its product assortment  to include distinct collections such as LP Italy®, Lucien Piccard®,  Dufonte® by Lucien Piccard, Maddy Emerson®, Maddy Emerson Couture®, ME Couture®, Venetian Gold® and others. In 2007, the LP Watch Group, Inc. and

A.G., Inc. expanded their product base and reach of its distribution through the acquisition of an eighty (80%) interest in the Charles Winston Luxury Group, LLC, known for its affordable fine high fashion jewelry utilizing simulated gemstones.

8. Collectively, the Debtors primarily sell their merchandise to department stores, retail web sites, resort hotels, cruise ships and direct response television businesses.

9. The downturn in the economy in general has had a negative impact on the Debtors' operations. As a result, the Debtors have incurred diminished revenues and have defaulted on their secured debt obligations and have been unable to remain current will all unsecured creditors, which has precipitated the filing of the Chapter 11 cases. However, the Debtors intend to restructure their debt through a plan of reorganization within the next 90 to 120 days. In the meantime, the Debtors shall maintain normal operations throughout the Chapter 11 proceedings including the preservation of jobs, servicing customers, and ensuring continued operation at the same level of service and quality customers received prior to the restructuring process.

10. Charles Winston Luxury Group, LLC and A.G., Inc. (the "Comerica Debtors") are indebted to Comerica pursuant to a certain Master Revolving Note in the principal sum of $6,500,000 (the "Promissory Note") (the Promissory Note, and all other loan documents executed by the Debtors in connection therewith, the "Loan Documents"). Pursuant to the Loan Documents, Comerica agreed to make, and has made, various advances to the Debtors (the "Loan"), and, as a result thereof, on the Petition Date, the Comerica Debtors were indebted to Comerica pursuant to the Loan Documents in the principal amount of approximately $5,693,574 (that principal amount, together with all interest, fees, costs, expenses and other amounts now or hereafter owing or accruing pursuant to the Loan Documents are collectively referred to

```
```
hereinafter as the "Indebtedness"). The Indebtedness is secured by all or substantially all of the Comerica Debtors' assets (such assets immediately prior to the Petition Date being referred to herein as the "Prepetition Collateral").

### III. Relief Requested

11. By this Motion, the Debtors seek the entry of an interim order ("Interim Order") authorizing the Debtors' use of cash collateral under the terms described below and in accordance with the cash collateral budget attached hereto as **Exhibit "A"** (the "Budget"), and the entry of a final order after proper notice and hearing.

### IV. Basis for Relief

12. For the purposes of this Motion and the Interim Order, the term "Cash Collateral" means the Debtors' available cash and other charges collected by the Debtors in any manner from the sale of its products (the "Cash Collateral").

13. An emergency need exists for the Debtors to use Cash Collateral in order to maintain their business operations. The Debtors require Cash Collateral for the payment of, *inter alia*, operating expenses, payroll, and the purchase of inventory and supplies to meet other expenses necessary to preserve their assets and continue their operations.

14. There is insufficient time for a full hearing to be held before the Debtors must use the Cash Collateral. If this Motion is not considered on an expedited basis, and if the Debtors are denied the ability to immediately use the Cash Collateral, there will be a direct and immediate material and adverse impact on the continuing operation of the Debtors' business and on the value of their assets. In order to achieve a successful reorganization, the Debtors must use the Cash Collateral in their ordinary business operations. The Debtors' inability to pay its ordinary

business expenses will require them to discontinue normal operations which will result in irreparable injury to the Debtors and their chances for reorganization.

15. It is the Comerica Debtors intention to grant to the Lender liens, security interests in the property of the estates and to provide the Lender the other rights and protections set forth herein.

16. If allowed to use the Cash Collateral, the Debtors believe that they can maintain their business operations during these Chapter 11 Cases as they seek to propose a plan of reorganization.

17. The terms for the use of the Cash Collateral, as detailed below in subsection A, are fair and reasonable, and the proposed adequate protection for the Lenders, detailed in subsection B, will preserve the value of the Lender's collateral.

**A.      Use of Cash Collateral**

18. Section 363 of the Bankruptcy Code governs a debtor's ability to use, sell, or lease property of the estate. Section 363(c)(2) of the Bankruptcy Code restricts a debtor's ability to use the Cash Collateral and provides, in pertinent part:

> The trustee [or debtor in possession] may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless –
> (a)   each entity that has an interest in such cash collateral consents; or
> (b)   the court, after notice and a hearing, authorizes the such use, sale, or lease in accordance with the provision of this section.

*Id.*

19. Section 363(a) of the Bankruptcy Code defines cash collateral as, *inter alia*, "the proceeds, products, profits, offspring, rents or profits of property." 11 U.S.C. § 363(a). As stated above, and for the purposes of this Motion, the Lender's cash collateral consists of monies collected by the Debtors on account of collections from the Debtor's customers.

5

20. The Comerica Debtors seeks authorization to use Cash Collateral in the amounts set forth on the Budget attached as **Exhibit "A"**. Unused budgeted amounts for any month shall roll over to the next month. The Debtors will be allowed to deviate from the Budget in an amount no more than 10% per line item per month to the extent necessary to operate their business through confirmation of the Plan.

**B.    Adequate Protection**

21. Pursuant to Section 363(c)(2)(B) of the Bankruptcy Code, a debtor-in-possession may use the Cash Collateral with court approval after notice and a hearing. 11 U.S.C. § 363(c)(2)(B). Section 363(e) of the Bankruptcy Code provides that, upon request of an entity that has an interest in property to be used by a debtor, the Court "shall prohibit or condition such use . . . as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). Here, the Court should approve the Debtor's proposed use of the Cash Collateral because the Lender's interests in the Cash Collateral will be adequately protected during the Debtors' continued business operations.

22. Adequate protection can be provided through a number of different methods. Section 361 of the Bankruptcy Code provides that adequate protection may be provided by (1) "providing to [an] entity an additional or replacement lien to the extent that such ... use . . . results in a decrease in the value of [the] entity's interest in such property" or (2) "granting such other relief . . . as will result in the realization by [an] entity of the indubitable equivalent of [the] entity's interest in such property." 11 U.S.C. §§ 361(1), (2), (3).

23. "Adequate protection is a means of preserving a creditor's interest in secured collateral subject to post-petition use by the debtor." *In re Carpet Center Leasing Co., Inc.*, 991 F.2d 682, 686 (11th Cir. 1993). What constitutes adequate protection is determined on a case-by-

case basis. *See MBank Dallas, N.A. v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1396-97 (10th Cir. 1987); *In re Martin*, 761 F.2d 472 (8th Cir. 1985). Simply stated, adequate protection is necessary only to the extent the use of the creditor's collateral will result in a decrease in "the value of such entity's interest in such property." 11 U.S.C. §§ 361, 363(e); *see United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 370-73 (1988) (the "interest in property" entitled to protection is "the value of the collateral" securing the claim).

24.     It is in the Lender's interests that the Debtors be allowed to use the Cash Collateral. It is respectfully submitted that the value of the Debtors' assets are in excess of the obligations due Comerica. Moreover, the Lender's collateral will be substantially impaired if the Debtors halt operations and do not have the ability to quickly restart their operations. Also, use of the Cash Collateral allows the Debtors to preserve the status quo and provide the Debtors an opportunity to reorganize for the benefit of all creditors.

25.     As noted above, section 361(2) of the Bankruptcy Code expressly provides that the granting of a replacement lien constitutes a means of providing adequate protection. 11 U.S.C. § 361(2). Here, the Debtors request that the Lender be granted replacement liens in the post-petition Collateral, including in all cash received post-petition, inventory and accounts receivable, to the same extent and priority as the Lender's respective pre-petition liens and security interests.

26.     The Debtors believe that the adequate protection described above is reasonable and in the best interest of its estate.  As such, the Debtors request the Court grant the foregoing adequate protection to the Lenders.

27.     The Debtors requests that the Court conduct an emergency hearing pursuant to Rule 4001(b)(2), and conduct a final hearing on not less than 15 days notice.

## V. Notice of Interim and Final Hearing

28. Notice of this Motion shall been given to: (a) the Office of the United States Trustee; (b) Lender; (c) any and all relevant taxing authorities; (d) any other creditor asserting an interest in the assets of the Debtors; (e) any other party who has requested notice in the Bankruptcy Case and (f) the list of twenty (20) largest unsecured creditors of the Debtors (the "Service List"). In light of the nature of the relief requested, the Debtors submit that no further notice need be given.

29. The Debtors request that they be authorized to serve a copy of the signed interim order authorizing the use of the Cash Collateral which fixes the time and date for filing with objections, if any, by first class mail upon the Service List and all other parties that have filed appearances in this case or as otherwise directed by this Court. The Debtors request that the Court consider such notice of the final hearing to be sufficient notice under Bankruptcy Rule 4001.

## VI. Conclusion

WHEREFORE, the Debtors respectfully request that the Court enter an order: (a) granting the Motion; (b) authorizing the Debtors' use of Cash Collateral pursuant to the terms of the proposed Interim Order; (c) granting the Lenders adequate protection under 11 U.S.C. §§ 361 and 363; and (d) granting such other and further relief as is just and proper.

Dated: July 14, 2010.

                                                     Respectfully submitted,

                                                     ARNSTEIN & LEHR LLP

                                                     By: */s/ Peter E. Shapiro*
                                                            Peter E. Shapiro
                                                            Florida Bar No.: 615511

        200 East Las Olas Boulevard, Suite 1700
        Fort Lauderdale, FL  33301
        Telephone:  954-713-7600
        Facsimile:  954-713-7700
        Email:  peshapiro@arnstein.com
        Proposed Counsel for Debtors and Debtors-in-Possession

9

9109748.1